UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH R. WATSON,

        Plaintiff,        CASE NO. 14-14124
                                    HON. DENISE PAGE HOOD

v.

WILLOW ENTERPRISES, INC., d/b/a
PORT HURON HOSPITAL INDUSTRIAL
HEALTH, *et al*,

        Defendants.
_____/

**<u>OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION (Doc # 39) and DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc # 30)</u>**

This matter is before the Court on a Report and Recommendation (Doc # 39) filed by Magistrate Judge Stephanie Dawkins Davis to grant the Motion for Summary Judgment (Doc # 30) filed by Defendants Willow Enterprises, Inc., d/b/a Port Huron Hospital Industrial Health ("Willow"); Sarah Kading, LPN ("Kading"); and Brandi Schieman, LPN ("Schieman"). Plaintiff Joseph R. Watson ("Watson") has filed Objections to the Report and Recommendation. (Doc # 41) Defendants have filed a Response to the Objections. (Doc # 42) Having conducted a *de novo* review of the parts of the Magistrate Judge's Report and Recommendations to

1

which valid objections have been filed pursuant to 28 U.S.C. § 636(b)(1), the Court ADOPTS IN PART AND REJECTS IN PART the Report and Recommendation and DENIES Defendants' Motion for Summary Judgment.

## I. BACKGROUND

The background facts of this matter are adequately set forth in the Magistrate Judge's Report and Recommendation, and the Court adopts them here in their entirety.

The parties submitted a Joint Statement of Resolved and Unresolved Issues Regarding Defendants' Motion for Summary Judgment. (Doc # 36) In summary, Watson brings an Eighth Amendment deliberate indifference claim based upon Willow employees Nurse Kading and Nurse Schieman's alleged failure to provide several of Watson's heart medications to him for five days while he was incarcerated in the St. Clair County Jail. Watson claims that this caused him to suffer a myocardial infarction on July 28, 2012. Defendants argue that they are entitled to summary judgment because Watson has failed to create a genuine issue of material fact to establish that Kading and Schieman's actions rose to the level of deliberate indifference to Watson's serious medical needs. Watson argues that questions of fact remain regarding Kading and Schieman's actions that preclude summary judgment.

## II. ANALYSIS

### A. Standard of Review

The standard of review by the district court when examining a Report and Recommendation is set forth in 28 U.S.C. § 636. This Court "shall make a *de novo* determination of those portions of the report or the specified proposed findings or recommendations to which an objection is made." 28 U.S.C. § 636(b)(1)(C). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* In order to preserve the right to appeal the magistrate judge's recommendation, a party must file objections to the Report and Recommendation within fourteen (14) days of service of the Report and Recommendation. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).

The summary judgment standard is adequately set forth in the Magistrate Judge's Report and Recommendation, and the Court adopts it here.

### B. Watson's Objections

In her February 14, 2017 Report and Recommendation, Magistrate Judge Davis recommended that the Court grant Defendants' Motion for Summary Judgment because Watson's claims sound in mere negligence and do not rise to the

level of deliberate indifference. The Magistrate Judge concluded that Watson offers no evidence to support that Kading and Schieman knew or should have known that the failure to quickly obtain the heart medications at issue would put Watson at risk of suffering a heart attack. Watson has filed eleven objections to the Report and Recommendation.

### 1. First Objection

Watson first objects to the Magistrate Judge's reliance on a Ninth Circuit case arguing that, in the Sixth Circuit, actual knowledge of the particular medical need is not required to show an awareness of the risk of harm. The Court finds that, while the Report and Recommendation includes one quotation from a Ninth Circuit case for the proposition that a defendant must purposefully ignore or fail to respond to a prisoner's medical need in order for deliberate indifference to be established[1] (which the Court rejects), the Magistrate Judge nevertheless applied the correct standard in her analysis: that a defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference for deliberate indifference to be established. *See* Doc # 39, Pg ID 490; *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Watson's first objection is overruled.

---

[1] *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992).

### 2. *Second, Third, and Fourth Objections*

Watson's second, third, and fourth objections are to the portion of the Report and Recommendation that sets forth the Defendants' arguments under the sub-heading "Parties' Arguments." After review of the Report and Recommendation, Watson's Objections, and Defendants' Response, the Court finds that the Magistrate Judge accurately set forth the Defendants' arguments, as well as Watson's arguments, before setting forth her analysis. Rather than "relying" on the facts that Watson complains are irrelevant or misstating the issues in this portion of the Report and Recommendation, the Magistrate Judge was simply setting forth Defendants' arguments. Watson's second, third, and fourth objections are overruled.

### 3. *Fifth Objection*

In Watson's fifth objection, he argues that the Magistrate Judge misstates the central issue in this case: that Kading and Schieman were deliberately indifferent in ignoring Watson's repeated requests for his missing medications in combination with their access to his medical screening information and their knowledge that several of the missing medications on the list were cardiac medications. The Magistrate Judge stated the issue somewhat differently as follows.

> There are essentially two actions (or inactions) that must be analyzed to determine if defendants' conduct rose to the level of deliberate indifference. First, did the defendants' apparent failure to obtain additional information that could have led to the verification of

> plaintiff's other medications constitute deliberate indifference? And, second did the failure to independently follow up with a physician rise to the level of deliberate indifference?

(Doc # 39, Pg ID 485). The Court finds that this specific language that Watson objects to is the same issue that he claims is the central issue in the case — whether Kading and Schieman were deliberately indifferent in how they responded or failed to respond to Watson's requests for his missing heart medications. Watson's fifth objection is overruled.

### 4.    Sixth Objection

Watson's sixth objection is to a portion of the Report and Recommendation that discusses *Latona v. Pollack*, No. 07-1 ERIE, 2010 WL 358526 (W.D. Pa. Jan. 25, 2010), *aff'd sub nom. Latona v. Prison Health Servs. Inc.*, 397 F. App'x 807 (3d Cir. 2010). Watson first argues that the Magistrate Judge applied a malice standard that is not required for a finding of deliberate indifference. In *Latona*, the court noted in passing that the defendants' denial of medications was not malicious or sadistic, and in the instant case, the Magistrate Judge noted in passing that "[s]imilarly, there is no evidence in this record of malice." (Doc # 39, Pg ID 486) After review of the Report and Recommendation, Watson's Objections, Defendants' Response, and the case, the Court finds that the Magistrate Judge did not improperly apply a malice standard in deciding the instant case. This portion of Watson's sixth objection is overruled.

Within his sixth objection, Watson further argues that there remains a question of fact regarding whether Defendants contacted the last pharmacy Watson had used to obtain his heart medication prescriptions in order to verify them. In the Report and Recommendation, the Magistrate Judge stated: "In relying solely on information concerning plaintiff's the [sic] last pharmacy to verify his prescriptions, defendants were following policy." During depositions, Kading and Schieman did not testify that they verified Watson's heart prescriptions with the last pharmacy he used. Rather, they testified that if there was a discrepancy between the medications that were verified and those claimed to be current by an inmate, they would have asked the inmate which pharmacy he used. They could not recall how they responded, if at all, in Watson's case. Watson testified that nobody asked him which pharmacy he used. According to Watson, his last pharmacy was The People's Clinic for Better Health. Records from this pharmacy show that Watson was taking all of the medications on the list attached to his medical screening form, including the missing heart medications he was requesting. The Court finds that there remains a question of material fact regarding whether Defendants contacted Watson's last pharmacy to verify his missing prescriptions. Accordingly, this portion of Watson's sixth objection is sustained, and the Court rejects this portion of the Report and Recommendation.

     *5.*     *Seventh Objection*

In Watson's seventh objection, he argues that the evidence shows that Defendants had knowledge sufficient to conclude that the denial or delay of his heart medications would put him at risk for a heart attack. The Magistrate Judge found that Watson had offered no evidence to support that argument. Having conducted a *de novo* review, the Court sustains Watson's seventh objection, and rejects the Magistrate Judge's conclusion.

Viewing the evidence in the light most favorable to Watson, he told Defendants that he had a heart condition and needed his heart medications during med pass on four consecutive days. On several occasions he was told by Defendants that they would look into the issue, and sometimes he received no response from Defendants at all.

Defendants testified that they receive the inmates' medical screening forms during their shifts. Watson's medical screening form included a list of his medications and indicated that he has high blood pressure and heart disease. Defendants reviewed this list, as it is undisputed that they were somehow able to verify and dispense four of the medications on the list (none of which were heart medications). Kading testified that she knew that several of the medications on Watson's list are cardiac medications. Kading further testified that if heart disease was circled on an inmate's medical screening form, she would order medications

within the first 24 hours and would make sure that the inmate had his heart medications. Schieman testified that if heart disease was circled on an inmate's medical screening form, she would review the information taken during booking and speak with the inmate. According to Defendants, if there was a discrepancy between the medications that were verified and those claimed to be current by the inmate, they would ask the inmate which pharmacy the inmate used, would give the inmate a medical request form, and/or would review booking information with the inmate. According to Defendants, there were physicians available to them "24/7," and they spoke to physicians daily while on duty.

Defendants cannot recall how they responded or what they did in Watson's case. Watson, on the other hand, testified that he is one hundred percent sure that nobody spoke to him about his medical issues, told him that he could complete a medical request form, or asked him which pharmacy he used. Records from the pharmacy he was using at the time would have verified all of the heart medications on the list attached to his screening form.

Drawing factual inferences in Watson's favor, as the Court must at this stage, a reasonable juror could conclude that Defendants were deliberately indifferent because they were aware of facts from which the inference could be drawn that a substantial risk of serious harm to Watson existed if he did not receive his missing heart medications, and that Defendants also drew that inference.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Viewed in the light most favorable to Watson, he repeatedly requested treatment for his heart problem. Defendants ignored his requests for his missing heart medications, and Watson received no treatment for his heart condition for four days. He then suffered a heart attack which the examining physician concluded was at least in part due to a lack of heart medications. Defendants were trained medical nurses who were aware or should have been aware that the lack of heart medications posed a serious risk to a patient with heart disease and high blood pressure. Indeed, Kading testified that if heart disease was circled on an inmate's medical screening form, she would order medications *within the first 24 hours* and would make sure that the inmate had his heart medications. When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all can amount to deliberate indifference. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014).

The Court concludes that genuine issues of material fact remain to preclude summary judgment as to whether Defendants asked Watson which pharmacy he used, looked into the reportedly missing heart medications, or informed Watson of

the procedure for seeing a doctor to discuss his missing heart medications after Watson repeatedly told Defendants that he had a heart problem and needed his missing heart medications. Accordingly, the Court denies Defendants' Motion for Summary Judgement, and the Court rejects the Magistrate Judge's conclusion and recommendation to the contrary.

      6.    *Eighth Objection*

Watson's eighth objection is to a portion of the Report and Recommendation that discusses *Potvin v. City of Westland Police Dep't*, No. 05-CV-70291, 2006 WL 3247116 (E.D. Mich. Nov. 7, 2006). The Magistrate Judge distinguished the case, stating:

> *Potvin* is factually distinguishable because not only were the defendants aware of the medical condition at issue, they <u>deliberately discarded</u> her medication. Moreover, after it was determined that the medications had been either destroyed or discarded, the officials in *Potvin* opted to release the plaintiff from jail that same day, rather than hold her until her previously planned release date two days later. Thus, there was evidence that the officials were both aware of the facts from which an inference of a substantial risk of harm could be drawn, and they in fact drew that inference. The court also noted that the defendants failed to offer any rebuttal to plaintiff's versions of events. Yet, in the present case, there is no evidence that the defendants drew an inference of a substantial risk of harm.

(Doc # 39, Pg ID 487-88) (emphasis in original). Watson argues that there was no actual finding that the defendants in *Potvin* deliberately discarded her medications. After review of the Report and Recommendation, Watson's Objections, Defendants' Response, and the case, the Court sustains Watson's eighth objection

to the extent that there was no actual finding that the defendants in *Potvin* deliberately discarded the plaintiff's medications. *See Potvin*, 2006 WL 3247116 at *11-12. However, the Magistrate Judge also distinguished *Potvin* on a second ground, which Watson did not object to—the fact that the defendants in *Potvin* opted to release the plaintiff from jail earlier than previously planned. Nevertheless and contrary to the Magistrate Judge's conclusion, the Court finds, as discussed above, that viewing the evidence in the light most favorable to Watson, there is circumstantial evidence from which a reasonable juror could conclude that Defendants drew an inference of a substantial risk of harm to Watson.

    7.    *Ninth Objection*

Watson's ninth objection is to a portion of the Report and Recommendation that discusses *Flores v. Lenawee Cnty.*, No. 07-11288, 2008 WL 4601404 (E.D. Mich. Oct. 15, 2008). The Magistrate Judge distinguished the case, stating:

> In *Flores*, the defendants had the plaintiff's medications in their possession and failed to dispense them. In addition, Judge Lawson pointed to specific evidence of "vindictiveness" by the defendants which he concluded presented a question of fact. As to one defendant, there was evidence that Flores cried[,] "[H]elp me[, h]elp me," but her cries were ignored. As to another defendant, there was evidence that he failed to give Flores her medications because he was too busy and was aware that she had been "begging" for her medications. As to yet another defendant, there was testimony that the deputies were overheard stating that Flores was not receiving her medications as punishment for the crimes she had committed. . . . There is no such similar evidence in the present case, which would tip the scales into finding a question of fact on the issue of deliberate indifference . . . .

(Doc # 39, Pg ID 488-89) Watson first argues that a showing of vindictiveness is not required for a finding of deliberate indifference. This portion of Watson's ninth objection is overruled because the Magistrate Judge did not conclude otherwise or apply a vindictiveness standard. Watson next argues that there are questions of material fact in this case on the issue of deliberate indifference. The Court finds no error in the Magistrate Judge's interpretation of *Flores* itself. Nevertheless and contrary to the Magistrate Judge's conclusion, the Court concludes that there is evidence in the present case that tips the scales into finding a question of fact on the issue of deliberate indifference, as discussed above. Accordingly, this portion of Watson's ninth objection is sustained, and the Court rejects this portion of the Report and Recommendation.

    8.    *Tenth Objection*

Watson's tenth objection is to a portion of the Report and Recommendation that discusses *Clark-Murphy v. Foreback*, 439 F.3d 280 (6th Cir. 2006). The Magistrate Judge distinguished the case, stating:

> Lastly, *Clark-Murphy* is distinguishable because it involved an interlocutory appeal on the issue of qualified immunity. The Court concluded that while the evidence did not show that the defendants singly or as a group showed deliberate indifference, for summary judgment purposes, they "*could have* perceived a substantial risk of serious harm to Clark." . . . Consequently, the defendants were not entitled to qualified immunity as a matter of law. The facts showed that all defendants were appraised that the plaintiff required psychiatric treatment, but took the position that since someone had notified healthcare, they did not need to worry about it further. Many

13

> were also aware of the water being turned off in plaintiff's cell. The plaintiff later died of dehydration. Given the differing procedural posture (the record here has been fully developed through discovery), and the vastly different facts, the Court does not find this case to be helpful in analyzing the present circumstances.

(Doc # 39, Pg ID 489) Watson argues that some of the facts in *Clark-Murphy* are analogous to the instant case, so the case should not have been dismissed for procedural reasons. After review of the Report and Recommendation, Watson's Objections, Defendants' Response, and the case, the Court overrules Watson's tenth objection. Rather than disregarding the case, as Watson contends, and in addition to noting the different procedural posture, the Magistrate Judge found that the facts in *Clark-Murphy* were quite different from the facts in the instant case. The Court agrees that the cases are not factually analogous in many respects.

### 9. *Eleventh Objection*

Watson's eleventh and last objection is to the Magistrate Judge's ultimate conclusion that Watson has not met the subjective prong of the deliberate indifference inquiry. This objection is overruled as an improper general objection. *See Howard*, 932 F.2d at 509. Nevertheless, as discussed above, the Court finds that, viewing the evidence in the light most favorable to Watson, there remain genuine issues of material fact regarding Kading and Schieman's actions that preclude summary judgment. Accordingly, the Court rejects this portion of the Report and Recommendation.

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Magistrate Judge Stephanie Dawkins Davis's Report and Recommendation (Doc # 39) is ADOPTED IN PART and REJECTED IN PART as set forth above.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Defendants Willow Enterprises, Inc., d/b/a Port Huron Hospital Industrial Health; Sarah Kading, LPN; and Brandi Schieman, LPN (Doc # 30) is DENIED for the reasons set forth above.

IT IS FURTHER ORDERED that this matter is set for a Final Pretrial Conference on Monday, May 15, 2017 at 2:30 p.m.. The proposed Joint Final Pretrial Order must be submitted by May 8, 2017. The jury trial is set for Tuesday, June 27, 2017 at 9:00 a.m..

Dated: March 31, 2017         s/Denise Page Hood
                              Chief, U.S. District Court

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2017, by electronic and/or ordinary mail.

                              s/LaShawn R. Saulsberry
                              Case Manager

15